UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Antoine Khoury,

                Plaintiff,

                                  Civ. No. 08-973 (RHK/JJK)
                                  **MEMORANDUM OPINION**
                                  **AND ORDER**

v.

Group Health Plan, Inc., and Reliastar
Life Insurance Company,

                Defendants.

---

Charles T. Hvass, Jr., Hvass, Weisman & King, Chartered, Minneapolis, Minnesota, Robert T. Brabbit, Brabbit & Salita, Minneapolis, Minnesota, for Plaintiff.

Ryan J. Burt, Gregory A. Bromen, Halleland Lewis Nilan & Johnson, P.A., Minneapolis, Minnesota, for Defendant Reliastar Life Insurance Company.

---

      Plaintiff Antoine Khoury, M.D., is a cardiologist employed by former Defendant Group Health Plan, Inc. ("Group Health").[1] After being injured on the job, he filed a claim with Group Health's long-term disability insurer, Defendant Reliastar Life Insurance Company ("Reliastar"). Reliastar approved Khoury's claim, but a dispute later arose regarding the amount of benefits to which he is entitled. After taking an unsuccessful administrative appeal of Reliastar's decision not to increase his benefits, Khoury commenced the instant action, alleging that Reliastar's actions violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*

---

[1] Khoury stipulated to the dismissal of Group Health from this action.

Reliastar now moves for summary judgment. For the reasons that follow, the Court will grant its Motion.

## BACKGROUND

The facts are relatively straightforward. On the date of his injury, Khoury was employed by Group Health pursuant to an employment contract. (Bromen Aff. Ex. 1 at RS000043-51.) Under the terms of that contract, he received "Base Department Compensation" of $500,000 per year. (Id. at RS000050.) In return for that compensation, he was required to participate in an "Equal Call Schedule." (Id.) "Equal Call" meant that he was required to be on call "1 weekend every 6 weeks and 2 weekdays per month," although that schedule was subject to "change from time to time, as determined by" Group Health's cardiology department. (Id.) In a separate section labeled "Other Compensation," the contract provided that Khoury would be paid $2,500 per day for any additional days he was on call. (Id.)

As a result of his injury,[2] Khoury submitted a long-term disability claim to Reliastar. (Bromen Aff. Ex. 5.) Reliastar approved his claim. (Id.) It then calculated the amount of his disability benefits in accordance with the plan's "Schedule of Benefits," which provides for different amounts depending upon the coverage selected by the

---

[2] The parties' briefs do not describe the nature of Khoury's injury. However, the administrative record indicates that Khoury suffered a neck injury "when pushing on a radiation shield then attached to suspended overhead monitoring equipment which was pushed by a co-worker. The shield did not rotate as designed." (Racette Aff. Ex. A at RS000155.) He later underwent spinal-fusion surgery, but he continues to complain of numbness, burning, and pain in his upper extremities, making it impossible for him to perform surgical procedures. (See id. at RS000062-67.)

employee and the severity of his disability.  (Id. Ex. 3 at RS000094.)  Because he remained capable of performing some but not all of his essential job functions, he fell into the plan's "residual disability" clause.  (See id. at RS000104.)  The monthly amount payable to an employee with a "residual disability" is calculated from his "Basic Monthly Earnings."  (Id. at RS000094.)  That term is defined in the plan as:  "your monthly salary or wage on the day before the date you became disabled including commissions, bonuses, and contributions to a 401K Plan or Section 125 Plan.  *It does not include overtime pay.*"  (Id. (emphasis added).)

Reliastar calculated Khoury's Basic Monthly Earnings using his $500,000 annual Base Department Compensation, and did not include any additional-call pay as part of its calculation.[3]  On September 17, 2007, his counsel wrote Reliastar asking for clarification.  (Id. Ex. 6.)  That letter provided:

> I would like to inquire as to how you determined the benefits which are being paid.  This is particularly true for the beginning wages of $580,000 per year prior to his disability.  As you know under his compensation plan, although he was originally scheduled to take call one week out of every six weeks, he in fact was taking call every fourth day and every fourth weekend.  This was not a bonus, this was mandated by the workloads between the number of doctors available and the patient load.  It was not optional.

(Id.)  In other words, he claimed that his Basic Monthly Earnings should have been based on an annual salary of $580,000 rather than $500,000 because he was required to work additional-call days.

---

[3] Khoury earned $92,500 in additional-call pay in 2003; $77,500 in additional-call pay in 2004; and $10,000 in additional-call pay in 2005.  (Bromen Aff. Ex. 2.)

Reliastar disagreed. Pointing to the employment contract's distinction between Base Department Compensation and Other Compensation (which included additional-call pay), Reliastar informed Khoury that, in its view, additional-call pay was not part of Basic Monthly Earnings. (See id. Ex. 7.) Accordingly, it concluded that his disability benefits should be calculated based on an annual salary of $500,000. (Id.)

By letter dated January 3, 2008, Khoury appealed that determination. (Id. Ex. 9.) Attached to his letter was an email from Group Health supporting his argument that additional-call pay should be included because it was "required by the [cardiology] department." (Id. Ex. 9 at RS000090.) Reliastar's appeals committee then met to consider his appeal. (Id. Ex. 11.) After obtaining (and reviewing) a full copy of his employment contract, it denied the appeal, stating:

> Consistently, throughout Dr. Khoury's claim file, the documentation provided by [Group Health] discusses a base pay amount which has never included [additional] [c]all [p]ay. . . . Although Dr. Khoury may have been required to perform extra [call] shifts due to staffing issues, he received extra pay for the additional . . . shifts worked over and above his $500,000.00 base pay. Extra pay received for extra time worked is generally considered 'overtime' and is certainly considered 'overtime' by the insurance industry.

(Id. at RS000039.) Khoury then commenced the instant action, challenging Reliastar's decision. Reliastar now moves for summary judgment.

**STANDARD OF DECISION**

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett,

4

477 U.S. 317, 322-23 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. Id. at 322; Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Graves v. Ark. Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

## ANALYSIS

### I. The standard of review for ERISA plans

When an ERISA plan authorizes its administrator to construe the plan's terms or determine eligibility for benefits, courts review the administrator's benefit decisions for abuse of discretion. E.g., Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Hackett v. Standard Ins. Co., 559 F.3d 825, 829 (8th Cir. 2009). Such review is "highly deferential" and "reflects the fact that courts are hesitant to interfere with the administration of a pension plan." Maune v. IBEW, Local No. 1, Health & Welfare Fund, 83 F.3d 959, 962-63 (8th Cir. 1996) (internal quotation marks and citation omitted). Under this standard, the administrator's decision will be upheld if it was reasonable, that is, if it was "supported by substantial evidence." Wakkinen v. UNUM Life Ins. Co. of

<u>Am.</u>, 531 F.3d 575, 583 (8th Cir. 2008). Substantial evidence means "'more than a scintilla but less than a preponderance.'" <u>Id.</u> (quoting <u>Woo v. Deluxe Corp.</u>, 144 F.3d 1157, 1162 (8th Cir. 1998)). Even if this Court would have reached a different decision, the administrator's decision must be upheld if a reasonable person *could have* reached the same result. <u>Id.</u> ("[W]e are to determine whether a reasonable person could have – not would have – reached a similar decision.").

The parties agree that the appropriate standard of review here is abuse of discretion. (Def. Mem. at 7; Mem. in Opp'n at 7.) The parties also agree that Reliastar's dual role as both insurer and administrator – that is, the entity charged with both awarding benefits and paying them – creates a conflict of interest that the Court must weigh in determining whether Reliastar abused its discretion. <u>See</u> <u>Metro. Life Ins. Co. v. Glenn</u>, __ U.S. __, 128 S. Ct. 2343, 2346 (2008). As set forth below, however, under the facts here Reliastar's conflict of interest has little impact on the Court's analysis.

**II.     The merits**

The relevant question in this case is whether Reliastar reasonably concluded that money earned for additional-call time should be omitted from Khoury's "Basic Monthly Earnings." Answering that question necessarily requires analysis of the term "Basic Monthly Earnings," which the plan defines as his "monthly salary or wage on the day before the date [he] became disabled including commissions, bonuses, and contributions to a 401K Plan or Section 125 Plan. It does not include overtime pay." The crux of this dispute is the meaning of the term "overtime," which is undefined in the plan. Reliastar argues that it reasonably concluded that pay Khoury received for additional-call days was overtime, while Khoury contends Reliastar erred in that conclusion.

Both parties acknowledge that the Court's decision must be guided by Finley v. Special Agents Mutual Benefit Ass'n, 957 F.2d 617 (8th Cir. 1992). Finley set forth five factors courts should consider when determining whether a plan administrator abused its discretion in interpreting disputed plan terms. Those factors are: (1) whether the administrator's interpretation of the plan's terms is consistent with the goals of the plan, (2) whether the interpretation renders any of the plan's terms meaningless or inconsistent, (3) whether the interpretation conflicts with the requirements of ERISA, (4) whether the plan has interpreted the words at issue consistently, and (5) whether the interpretation is contrary to the clear language of the plan. Id. at 621.

The Finley factors amply support Reliastar's decision here. Most important for present purposes is the fifth factor, namely, whether Reliastar's decision is consistent with

the clear language of the plan. In answering that question, it is appropriate to resort to dictionary definitions of the disputed term "overtime." See, e.g., Cash v. Wal-Mart Group Health Plan, 107 F.3d 637, 643-44 (8th Cir. 1997) (Kyle, J., sitting by designation) ("Recourse to the ordinary, dictionary definition of words is not only reasonable, but may be necessary.") (quoting Finley, 957 F.2d at 622). The American Heritage Dictionary defines "overtime" as "[p]ayment for additional work done outside of regular working hours." American Heritage Dictionary 887 (2d college ed. 1985). Similarly, Black's Law Dictionary defines "overtime" as "[a]fter regular working hours; beyond the regular fixed hours" and "overtime wage" as the "[p]ortion of wages paid [to an] employee for services rendered beyond regularly fixed working hours." Black's Law Dictionary 1105 (6th ed. 1990). Reliastar employed such a definition when it ruled on Khoury's appeal – it rejected the appeal because it determined that "[e]xtra pay received for extra time worked is generally considered 'overtime.'" (Bromen Aff. Ex. 9 at RS000039.) In other words, Reliastar gave the term "overtime" its commonly understood meaning; it did not "misinterpret [this] unambiguous language." Lickteig v. Bus. Men's Assurance Co. of Am., 61 F.3d 579, 585 (8th Cir. 1995).[4]

---

[4] In denying Khoury's appeal, Reliastar also noted that extra pay for extra work "is certainly considered 'overtime' by the insurance industry." (Bromen Aff. Ex. 9 at RS000039.) Khoury argues that Reliastar has "shifted its basis" for denying his appeal because "[i]n this litigation, [it] does not defend the definition of overtime based on insurance industry standards." (Mem. in Opp'n at 7.) The Court disagrees. When denying his appeal, Reliastar specifically noted that "[e]xtra pay received for extra time worked is *generally* considered 'overtime'" (emphasis added) and then also noted that extra pay for extra work is considered overtime by the insurance industry. The mere fact that Reliastar has chosen not to rely on insurance-industry standards in this litigation is not evidence of flip-flopping; it has narrowed its position, not

8

Moreover, Reliastar reasonably concluded that additional-call time fell within this commonly understood definition. Khoury's employment agreement separated "Base Department Compensation" from "Other Compensation," and it placed pay for additional-call time in the latter section. The amount of additional-call time he worked (and, hence, the amount he earned for that additional-call time) fluctuated from year to year, suggesting it was "work done outside of regular working hours." And, much of the documentation submitted by Group Health to Reliastar listed his base salary as $500,000 and treated his pay for additional-call time as separate and distinct compensation. (See, e.g., Bromen Aff. Ex. 2 (describing his "salary" as $500,000 and, with regard to additional-call pay, stating "*[i]n addition*, he was paid" other sums in 2003, 2004, and 2005 for "additional [c]all [p]ay") (emphasis added); Racette Aff. Ex. A at RS000360 (noting his "base salary" was $500,000); id. at RS000372.) In light of these facts, it was reasonable for Reliastar to conclude that his "Basic Monthly Earnings" were limited to his "Base Department Compensation" and that money earned for additional-call time was "extra pay received for extra work" and, hence, was excluded as "overtime." Reliastar's determination, therefore, was consistent with the clear language of the plan. See, e.g., Hutchins v. Champion Int'l Corp., 110 F.3d 1341, 1344 (8th Cir. 1997) ("Under an abuse of discretion standard, we do not search for the best or preferable interpretation of a plan

---

changed it.

9

term: it is sufficient if the [administrator's] interpretation is consistent with a commonly accepted definition.").

Each of the remaining Finley factors either is in accord or neutral. Reliastar's interpretation is consistent with the plan's goals, insofar as it applies the terms of the plan as written. Cf. Lickteig, 61 F.3d at 585 (administrator's interpretation inconsistent with plan's goals where it deprived employees of benefits due under plan's unambiguous language). The interpretation does not render any language in the plan meaningless or inconsistent. And there is no suggestion that the interpretation conflicts with the requirements of ERISA or that Reliastar has interpreted the term "overtime" inconsistently in the past. Accordingly, under Finley, Reliastar's decision must be upheld by this Court.

In arguing that Reliastar abused its discretion, Khoury points out that additional-call time was mandatory and that his employer considered it part of his base earnings. (See Mem. in Opp'n at 6.) But this is largely irrelevant. "Review for abuse of discretion . . . ensures that an administrator's decision is supported by substantial evidence, that is, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" King v. Hartford Life & Accident Ins. Co., 414 F.3d 994, 999 (8th Cir. 2005) (citation omitted). In the Court's view, the evidence recited above provided a

sufficient basis for a "reasonable mind" to conclude that additional-call pay was overtime, notwithstanding any contrary evidence from his employer.[5]

Nor does the Court find that Reliastar's conflict of interest affected its decision – indeed, Khoury does not really argue otherwise. He devotes more than a page of his brief to a block quote from Glenn discussing the conflict-of-interest issue (see Mem. in Opp'n at 8-10), but then fails to explain how the conflict matters here. There is no evidence, for example, that Reliastar has a long history of biased claim administration, thereby giving greater weight to the conflict. See Glenn, 128 S. Ct. at 2351. Moreover, Reliastar has already approved his claim and is paying him substantial long-term disability benefits based on an annual salary of a half-million dollars. It would be anomalous indeed to conclude that it decided to award him benefits based on a $500,000 annual salary, but then chose to "nickel and dime" him by rejecting his claim for less than 20% more without a valid reason.

Finally, the Court must address the ultimate red herring in Khoury's brief: the "missing" e-mail. (See Mem. in Opp'n at 10-11.) After his counsel contacted Reliastar

---

[5] The Court need not wade into the parties' dispute as to whether it may consider the extra-record evidence submitted by Khoury when ruling on the instant Motion, evidence which Khoury argues confirms his understanding that additional-call pay was not overtime. Even if the Court were to determine that all such evidence were properly before it, it would still conclude that Reliastar's decision was reasonable. See, e.g., Coker v. Metro. Life Ins. Co., 281 F.3d 793, 799 (8th Cir. 2002) (reviewing court must only determine whether there existed "substantial evidence" to support administrator's decision, even in the face of contrary evidence); Barnhart v. UNUM Life Ins. Co. of Am., 179 F.3d 583, 589 (8th Cir. 1999) (the "mere fact that UNUM reached a decision contrary to Barnhart's medical evaluators, when it based this decision on substantial evidence in the record . . . and conflicting evidence in Barnhart's own submissions," insufficient to support reversal of plan administrator).

regarding the calculation of his benefits, Tonia Hackett, the Reliastar claims processor handling his claim, obtained by fax from Group Health a copy of his employment agreement. That fax purportedly included an e-mail indicating that Group Health superiors viewed additional-call pay as part of his Basic Monthly Earnings. Yet, Hackett inexplicably did not receive this e-mail with the rest of the fax, something Khoury now labels "malfeasance" supporting his argument that Reliastar abused its discretion. Yet, he can point to no evidence in the record indicating that the "disappearance" of this e-mail was anything other than a clerical error.

More importantly, this argument overlooks that Reliastar's initial claim decision – the decision in which Hackett was involved – is not at issue here. Rather, the decision before this Court is Reliastar's denial of Khoury's appeal, *i.e.*, Reliastar's *final* decision. See, e.g., Galman v. Prudential Ins. Co. of Am., 254 F.3d 768, 770-71 (8th Cir. 2001).[6] Hackett was not involved in that decision. And, there is no dispute that Khoury's counsel submitted to Reliastar's appeals committee a different e-mail stating that Group Health viewed additional-call pay as part of his Basic Monthly Earnings. (See Bromen Aff. Ex. 9.) Thus, it had before it the very same information that Khoury now contends Reliastar intentionally hid. Accordingly, even if he were correct that the e-mail went "missing" for nefarious reasons, the Court's analysis would not change.

---

[6] Reviewing final decisions of plan administrators rather than initial decisions protects the integrity of the administrative-review process, an important consideration since "Congress intended plan fiduciaries, not the federal courts, to have primary responsibility for claims processing." Duhon v. Texaco, Inc., 15 F.3d 1302, 1309 (5th Cir. 1994); see also Galman, 254 F.3d at 770-71.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. No. 45) is **GRANTED** and Plaintiff's Complaint (attached to Doc. No. 1) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 2, 2009

s/Richard H. Kyle
RICHARD H. KYLE
United States District Judge